IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ATLANTIC COAST PIPELINE, LLC,
    Plaintiff,

v.                                            Lead Case No. 3:17-cv-00814-JAG
                                            Underlying Case No. 2:18-cv-00058-JAG
                                            Underlying Case No. 2:18-cv-00417-JAG

1.52 ACRES, MORE OR LESS, IN NOTTOWAY
COUNTY, VIRGINIA, et al.,
    Defendants.

## OPINION

Atlantic Coast Pipeline, LLC ("Atlantic"), seeks to exercise its eminent domain powers pursuant to Section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h). On January 31, 2018, Atlantic filed its Complaints in Condemnation to acquire certain easements for two underlying cases. Atlantic subsequently served the defendants named in the two underlying cases personally or through publication. On August 16, 2018, the Clerk entered default against all the defendants who failed to respond in Underlying Case No. 2:18-cv-00058-JAG. On January 18, 2019, the Clerk entered default against all the defendants who failed to respond in Underlying Case No. 2:18-cv-00417-JAG (the "Non-Responding Defendants"). Atlantic filed its Motion for Default Judgment against the Non-Responding Defendants in Underlying Case No. 2:18-cv-00058-JAG on August 20, 2018. Dk. No. 124. Atlantic renewed its Motion for Default Judgment against the Non-Responding Defendants in Underlying Case No. 2:18-cv-00058-JAG and moved for default judgment against the Non-Responding Defendants in Underlying Case No. 2:18-cv-00417-JAG on January 18, 2019. Dk. No. 477.

As a natural gas company in possession of a certificate of public convenience and necessity from the Federal Energy Regulatory Commission, Atlantic may condemn the property

interests at issue in this litigation and is thus entitled to have default judgment granted in its favor against the Non-Responding Defendants. On February 14, 2019, the Court held a bench trial to determine the just compensation owed to the Non-Responding Defendants for the property condemned.

## I. FACTS

After the bench trial, the Court finds the following facts:

### A. *Atlantic Is a Natural Gas Company in Possession of a Certificate of Public Convenience and Necessity Issued by the FERC*

Atlantic is an interstate natural gas company as defined by Section 2(a) of the Natural Gas Act, 15 U.S.C. § 717 *et seq.* Atlantic is subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC") and is authorized to construct, own, operate, and maintain pipelines for the transmission of natural gas in interstate commerce. *See* 15 U.S.C. § 717; Dk. No. 478-1, Memo. in Supp. of Atlantic's Mot. for Default J., Ex. 1, Decl. of Jedidiah Spratt ("Spratt Decl.") ¶ 7.

Atlantic is in the process of constructing an approximately 600-mile underground pipeline and related facilities for the purpose of transporting natural gas from West Virginia to Virginia and North Carolina (the "ACP Project"). *See* Spratt Decl. ¶ 5. The ACP Project will measure approximately 42 inches in diameter in West Virginia and Virginia, and 36 inches in diameter in North Carolina. Certain extensions of the ACP Project will measure 20 inches in diameter from Northampton County, North Carolina, to the City of Chesapeake, Virginia, and 16 inches in diameter in Brunswick County, Virginia, and Greensville County, Virginia. *See* Spratt Decl. ¶ 8. Natural gas transported by the ACP Project will serve multiple public utilities. *See* Spratt Decl. ¶ 9.

Atlantic filed an application for a certificate of public convenience and necessity with FERC on September 18, 2015, FERC Docket No. CP15-554-000, in which it sought permission to construct the ACP Project and attendant facilities. On October 13, 2017, FERC issued a certificate of public convenience and necessity (the "FERC Certificate") authorizing Atlantic to construct and operate the ACP Project. (Comp. Ex. 2). *See* Spratt Decl. ¶ 10; *see also* Spratt Decl., Ex. A, the October 13, 2017 Certificate of Public Convenience and Necessity Issued by the Federal Energy Regulatory Commission to Atlantic.

### B. Atlantic Seeks to Condemn Certain Property Rights from the Defendants

Each of the Non-Responding Defendants for each underlying case owns a property interest in the certain tracts of land sought to be condemned by Atlantic. *See* Dk. No. 1, ¶ 16 (2:18-cv-00058-JAG); Dk. No. 1, ¶ 16 (2:18-cv-00417-JAG). Atlantic filed its Complaints in Condemnation to acquire easements from the Non-Responding Defendants for the two underlying cases. *See* Dk. No. 1, ¶ 2 (2:18-cv-00058-JAG); Dk. No. 1, ¶ 2 (2:18-cv-00417-JAG). Specifically, Atlantic seeks to construct a portion of the ACP Project on the Properties described in detail below. The ACP Project cannot be constructed until Atlantic acquires certain permanent easements (the "Permanent Easements") and temporary easements (the "Temporary Easements") (collectively the "Easements") on the Properties. The Easements are necessary for constructing, maintaining, operating, altering, testing, replacing, and repairing the ACP Project. *See* Dk. No. 1, ¶ 16 (2:18-cv-00058-JAG); Dk. No. 1, ¶ 16 (2:18-cv-00417-JAG).

The Permanent Easements to be taken on each Property include a permanent and exclusive easement and right-of-way to construct, operate, maintain, replace, repair, remove, or abandon the ACP Project and appurtenant equipment and facilities, as well as the right to change the location of the installed pipeline within the area of the Permanent Easement as may be

necessary or advisable. *See* Dk. No. 1, ¶ 18 (2:18-cv-00058-JAG); Dk. No. 1, ¶ 18 (2:18-cv-00417-JAG).

The Temporary Easements will enable Atlantic to construct the ACP Project and engage in restoration or clean-up activities. The Temporary Easements are requested as of the date of authorized entry onto the Property and their use is required until all work, including restoration, is complete. The Temporary Easements will be effective and condemned for a period not to exceed five (5) years following Atlantic's possession of the Easements. *See* Dk. No. 1, ¶ 19 (2:18-cv-00058-JAG); Dk. No. 1, ¶ 19 (2:18-cv-00417-JAG).

*1. Underlying Case Number 2:18-cv-00058-JAG*

The defendants Muneer Elahi, Robyn Shahid, Rodyn Shahid, Gary J. Maddox, Larry Skinner, Rodney Lionel Tillery, Valencia Tillery, Cynthia A. Thompson, Barry L. Skinner, Kennedy Tyrone Skinner, Fletcher Skinner, Leroy Skinner, Andre Skinner, Damon Lovell Tillery, Eunice Willis, Marie Rivers, Ronald Parker, Sudie V. Skinner, Terrelle Warren, Lloyd E. Pettus, Ahmad Khalil Shy, Jr., the Unknown Heirs of Billy Earl Briggs, the Unknown Heirs of Brenda D. Willis, the Unknown Heirs of Earlo White, the Unknown Heirs of Georgiana Willis a/k/a Beatrice Willis a/k/a Beatrice Powell, the Unknown Heirs of Louise White, the Unknown Heirs of Margaret Armstrong, the Unknown Heirs of Mary B. White, the Unknown Heirs of Thomas Willis, and the Unknown Heirs of Viola Willis Sumler own real property located in the City of Suffolk, Virginia, and more specifically a parcel composed of 1.00 acre, more or less, and being more particularly described as the "first" tract of land described in that certain Deed recorded in Deed Book 122, Page 412, recorded among the land records of the City of Suffolk, Virginia, and as further identified as Parcel Identification No. 303677000 (27*3A) (the "Tillery Property"). *See* Compl. ¶ 5, Dk. No. 1 (2:18-cv-00058-JAG).

Atlantic attempted to negotiate to acquire Easements over the Tillery Property for the purpose of the construction of an interstate natural gas pipeline. *See* Spratt Decl. ¶¶ 12-14. Atlantic has settled with 90 known landowners for the Tillery Property. The remaining, active defendants in this case are a mix of known landowners and unknown heirs who collectively have a roughly 41% ownership interest in the Tillery Property. Atlantic, despite negotiation efforts, has been unable to acquire by contract, or has been unable to agree with the remaining defendants as to the compensation to be paid for, the necessary easements to construct, operate, and maintain a pipeline for the transportation of natural gas.

The area and dimensions of the Easements Atlantic seeks to condemn on the Tillery Property are depicted in Exhibit 4 to the Complaint in Condemnation. *See* Dk. No. 1-4 (2:18-cv-00058-JAG); *see also* Atlantic's Trial Exhibit No. 3. Dk. No. 419. The precise legal rights that make up the Easements Atlantic seeks to condemn in the Tillery Property are enumerated in Atlantic's Trial Exhibit No. 2. Dk. No. 419.

*2. Underlying Case Number 2:18-cv-00417-JAG*

The defendants Christopher T. Ashe, Glynis Marie Hill, Jacqueline Holland-Gatling, Jackquelyn Abdul-Azim Stancil, and Michael Ashe own real property located in the City of Suffolk, Virginia, as is more particularly described as Parcel Identification No. 152043000, composed of 1.43 acres, more or less, as is more particularly described as that certain tract containing 2 acres as described in that certain deed recorded in Deed Book 148-B, Page 215, Instrument #39, among the land records of the City of Suffolk, Virginia; less and except that certain tract containing 0.42 acre, more or less, as described in that certain deed recorded in Deed Book 229, Page 710, Instrument #1517; less and except that certain tract containing 0.15 acre, more or less, as described in that certain deed recorded in Deed Book 190, Page 541, Instrument

#1782, all among the land records of the City of Suffolk, Virginia (the "Langston Property"). See Compl. ¶ 5, Dk. No. 1 (2:18-cv-00417-JAG).

Atlantic attempted to negotiate to acquire Easements over the Langston Property for the purpose of the construction of an interstate natural gas pipeline. *See* Spratt Decl. ¶¶ 12-14. There are 35 landowners who have already settled with Atlantic for the Langston Property. The remaining, active defendants in this case are heirs who collectively have a roughly 8.555% ownership interest in the Langston Property. Atlantic, despite negotiation efforts, has been unable to acquire by contract, or has been unable to agree with the remaining defendants as to the compensation to be paid for, the necessary easements to construct, operate, and maintain a pipeline for the transportation of natural gas.

The area and dimensions of the Easements Atlantic seeks to condemn on the Langston Property are depicted in Exhibit 4 to the Complaint in Condemnation. *See* Dk. No. 1-4 (2:18-cv-00417-JAG); *see also* Atlantic's Trial Exhibit No. 9. Dk. No. 419. The precise legal rights that make up the Easements Atlantic seeks to condemn in the Langston Property are enumerated in Atlantic's Trial Exhibit No. 8. Dk. No. 419.

### *C. None of the Defendant Landowners Responded to Atlantic's Complaint in Condemnation*

Atlantic has properly served process on the Non-Responding Defendants and filed the appropriate affidavits of service and certificates of proof by publication. *See* Dk. Nos. 477, 478. The Non-Responding Defendants have not filed any responsive pleading and are thus in default. *See* Dk. Nos. 117, 476. Without gaining full access and rights from the Non-Responding Defendants to the Easements that are necessary to the ACP Project, Atlantic cannot timely complete construction of the ACP Project.

## II. PROCEDURAL HISTORY

### A. Underlying Case Number 2:18-cv-00058-JAG

Atlantic filed its Complaint in Condemnation in the above-captioned matter on January 31, 2018. *See* Dk. No. 1 (Case No. 2:18-cv-00058-JAG). On March 7, 2018, the Court consolidated this underlying case with the lead case. *See* Dk. No. 36. On March 9, 2018, the Court granted Atlantic's Motion for Immediate Access, upon Atlantic's payment of bond. *See* Dk. No. 41. Atlantic did not request an entry of default for defendants Ahmad Khalil Shy, Jr., or Lloyd E. Pettus. Atlantic has determined that these defendants are currently incarcerated. Atlantic filed a motion to appoint a guardian ad litem ("GAL") for these defendants on August 10, 2018. *See* Dk. No. 101. The Clerk entered default against the Non-Responding Defendants in this underlying case on August 16, 2018. *See* Dk. No. 117. On August 30, 2018, the Court appointed Matthew J. Yao, Esq. to represent the interests of Ahmad Khalil Shy, Jr., and Lloyd E. Pettus as their GAL. *See* Dk. No. 131. Atlantic has renewed its pending Motion for Default Judgment against these Non-Responding Defendants. *See* Dk. Nos. 477, 478.

### B. Underlying Case Number 2:18-cv-00417-JAG

Atlantic filed its Complaint in Condemnation in the above-captioned matter on August 1, 2018. *See* Dk. No. 1 (Case No. 2:18-cv-00417-JAG). On August 8, 2018, the Court consolidated this underlying case with the lead case. *See* Dk. No. 92. The Clerk entered default against the Non-Responding Defendants in this underlying case on January 18, 2019. *See* Dk. No. 476. Atlantic's Motion for Default Judgment against the Non-Responding Defendants is pending. *See* Dk. Nos. 477, 478.

## III. DISCUSSION

### A. Default Judgment

Under Rule 12(a) of the Federal Rules of Civil Procedure, a defendant must serve an answer within 21 days after being served with the summons and complaint. Fed. R. Civ. P. 12(a). Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). As a result of the Non-Responding Defendants' failure to respond, the Clerk entered default against them on August 16, 2018 and January 18, 2019. *See* Dk. Nos. 117, 476.

### B. Atlantic Has the Right to Condemn

#### 1. The Natural Gas Act Provides Atlantic with the Authority to Condemn

The Natural Gas Act provides Atlantic with the authority to condemn interests in property where (i) Atlantic is the holder of a certificate of public convenience and necessity from FERC and (ii) Atlantic and the landowner cannot agree on the compensation for the property interest at stake:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas . . . it may acquire the same by the exercise of the right of eminent domain in the district

court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C. § 717f(h).

### 2. Atlantic Has a Certificate of Public Convenience and Necessity

The FERC Certificate issued to Atlantic gives Atlantic the unequivocal power of eminent domain, which includes the power to condemn any land, including the Easements, which is necessary for the construction of the ACP Project. No fact can genuinely be in dispute as to the issuance of the FERC Certificate or the contents therein because a certificate of public convenience and necessity is a matter of public record and not subject to collateral attack. *See E. Tenn. Nat. Gas, LLC v. 1.28 Acres*, No. 1:06-cv-00022, 2006 U.S. Dist. LEXIS 24450, at *36-37 (W.D. Va. Apr. 26, 2006) (holding that the defendants could not use a condemnation action to review the propriety of the issuance of a FERC certificate) (citing *Williams Nat. Gas Co. v. Okla. City*, 890 F.2d 255, 264 (10th Cir. 1989), *cert. denied*, 497 U.S. 1003 (1990)); *see also Am. Energy Corp. v. Rockies Express Pipeline LLC*, No. 2:09-cv-284, 2009 U.S. Dist. LEXIS 59972, at *9 (S.D. Ohio July 14, 2009) (holding that "a district court lacks jurisdiction to review the validity and/or conditions of a FERC certificate . . . [and] the function of the district court is not to provide appellate review, but rather to provide for enforcement").

Here, just as in *1.28 Acres*, Atlantic has satisfied the first condition of Section 717f(h) because FERC granted Atlantic a Certificate of Public Convenience. Based on the language of the FERC Certificate and controlling case law, Atlantic has the power of eminent domain under the Natural Gas Act and the right to the easements by eminent domain.

### 3. The Easement Rights Atlantic Seeks Are Necessary

Atlantic must acquire the Easements in order to install, construct, and maintain the ACP Project. *See* Spratt Decl. ¶ 7. The FERC-approved route for the ACP Project crosses the

Properties. *See* Dk. No. 1-4 (2:18-cv-00058-JAG); *see also* Atlantic's Trial Exhibit No. 3 (Dk. No. 419); Dk. No. 1-4 (2:18-cv-00417-JAG); *see also* Atlantic's Trial Exhibit No. 9 (Dk. No. 419). The ACP Project cannot be constructed without the Easements. *See* Spratt Decl. ¶ 16.

Thus, the Easements are necessary for the construction of the ACP Project, entitling Atlantic to judgment on its right to condemn the Easements. *See Transcon. Gas Pipeline Co., LLC v. Permanent Easement Totaling 2.322 Acres*, No. 3:14-cv-00400-HEH, 2014 U.S. Dist. LEXIS 122588, at *11 (E.D. Va. Sept. 2, 2014) ("Additionally, the FERC Certificate[] . . . establishes that the property condemned in this matter is necessary for the construction, operation, and maintenance of the pipeline at issue."); *Hardy Storage Co. v. Prop. Interests Necessary to Conduct Gas Storage Operations*, No. 2:07CV5, 2009 U.S. Dist. LEXIS 18124, at *13-14 (N.D. W. Va. Mar. 9, 2009) (finding that a landowner's challenge to the necessity of the proposed easement constitutes an impermissible collateral attack).

*4. Atlantic Cannot Acquire the Necessary Easements by Contract*

Atlantic has been unable to reach an agreement with the Owners on the amount of compensation for the Easements. *See* Spratt Decl. ¶¶ 12-15. Atlantic started negotiations to acquire the Easements in 2016. *See* Spratt Decl. ¶ 13. Atlantic, however, has been unable to obtain the remaining interest in the Easements by contract. *See* Spratt Decl. ¶¶ 15, 16; *Hardy*, 2009 U.S. Dist. LEXIS 18124, at *16 (finding that "[the condemnor] is not required by the [NGA] or Rule 71.1 to engage in 'good faith' negotiations with the landowner"); *E. Tenn. Natural Gas*, 2006 U.S. Dist. LEXIS 24450, at *28-29 (concluding that "[a]ll the [NGA] requires is a showing that the plaintiff has been unable to acquire the property by contract or has been unable to agree with the owner of the property as to the compensation to be paid").

### 5. The Non-Responding Defendants Are in Default

The named Non-Responding Defendants have failed to file an answer or response in the time period required pursuant to Section 12(a) of the Federal Rules of Civil Procedure. As a result, the Clerk entered default for the Non-Responding Defendants on August 16, 2018, and January 19, 2019. *See* Dk. Nos. 117, 476. Accordingly, Atlantic is entitled to an order confirming its right to condemn the Non-Responding Defendants' Properties pursuant to the authority conferred by 15 U.S.C. § 717f(h) and default judgment against the Non-Responding Defendants. *See, e.g., E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 827-28 (4th Cir. 2004) (citing cases); *Columbia Gas Transmission Corp. v. An Easement to Construct, Operate, and Maintain a 24-Inch Transmission Pipeline Across Properties in Greene Cty.*, 2007 U.S. Dist. LEXIS 55422, at *9-10 (W.D. Va. July 31, 2007) (granting judgment where Columbia had established that it was a holder of a FERC certificate and no agreement with respect to just compensation could be reached); *Nw. Pipeline Corp. v. The 20' x 1,430' Pipeline Right of Way Easement 50' x 1,560' Temp. Staging Area*, 197 F. Supp. 2d 1241, 1243-44 (E.D. Wash. 2002) (granting summary judgment as to validity of taking); *Tenn. Gas Pipeline Co. v. New England Power, C.T.L., Inc.*, 6 F. Supp. 2d 102, 104 (D. Mass. 1998) (granting motion for partial summary judgment where the condemnor satisfied the elements of Section 717f(h)).

Atlantic has established that it holds a FERC Certificate and that it has been unable to reach an agreement with the Non-Responding Defendants with respect to the Easements, there can be no dispute that Atlantic has stated a legitimate claim and is entitled to condemn the Non-Responding Defendants' Properties. *See Columbia Gas Transmission, LLC v. 0.85 Acres, More or Less, in Harford Cty.*, 2014 U.S. Dist. LEXIS 125318, at *17 (D. Md. Sept. 8, 2014) (granting Columbia's Motion for Partial Summary Judgment where the court determined that requirements

of Section 717f(h) were met); *Columbia Gas Transmission, LLC v. 370.393 Acres, More or Less, in Baltimore Cty.*, 2014 U.S. Dist. LEXIS 144055, at *15-16 (D. Md. Oct. 9, 2014) (same).

## IV. JUST COMPENSATION

The only issue remaining is the just compensation that is owed to the remaining, active defendants—made up of the Non-Responding Defendants and the defendants Ahmad Khalil Shy, Jr., and Lloyd E. Pettus. Ahmad Khalil Shy, Jr., and Lloyd E. Pettus are each represented by the GAL, Matthew J. Yao, Esq. Atlantic offered evidence about the properties discussed above (the "Subject Properties") and the areas of the taking from each individual property, and the rights for the Easements that Atlantic seeks to condemn.

The landowners have the burden of proving, by a preponderance of the evidence, the amount of just compensation owed for the easements condemned by Atlantic. *United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 273 (1943); *Bank of Edenton v. United States*, 152 F.2d 251, 253 (4th Cir. 1945); *Vector Pipeline LP v. 68.55 Acres of Land*, 157 F. Supp. 2d 949, 952 (N.D. Ill. 2001). Just compensation is measured from the point of view of the landowner. The yardstick is what a landowner has lost, not what Atlantic has gained. *Boston Chamber of Commerce v. City of Boston*, 217 U.S. 189, 195 (1910); *see also United States v. Causby*, 328 U.S. 256, 261 (1946) ("It is the owner's loss, not the taker's gain, which is the measure of the value of the property taken."). Courts apply the objective standard of fair market value to determine what the landowner has lost when its property is condemned. *United States v. 564.54 Acres of Land*, 441 U.S. 506, 511 (1979). Fair market value is defined as the fair and reasonable amount which could be attained in the open market at a voluntary sale. *Id.*

Where a taking is temporary in duration rather than permanent, then the condemning authority "essentially takes a leasehold in the property," and "the value of the taking is what

rental the marketplace would have yielded for the property taken." *United States v. Banisadr Bldg. Joint Venture*, 65 F.3d 374, 378 (4th Cir. 1995). If the condemnor is the only party to admit evidence to the Court of the value of the real property taken, the Court may use that evidence to determine the just compensation of the property and enter default judgment against defendant landowners and award the defendants their just compensation as determined by the condemnor. *See Gulf Crossing Pipeline Co. LLC v. 86.36 Acres*, No. 08-689, 2009 U.S. Dist. LEXIS 4612, at *14-15 (W.D. La. Jan. 23, 2009).

Here, Atlantic offered evidence at trial as to the value of the Easements condemned through its valuation expert, Corey Sell, and the appraisals that Mr. Sell prepared for each of the Subject Properties. Atlantic offered the appraisal of (a) the Tillery Property as Atlantic's Trial Exhibit No. 11; and (b) the Langston Property as Atlantic's Trial Exhibit No. 13. The appraisals for each of the Subject Properties are proper evidence for the determination of just compensation for the Subject Properties. *See 86.36 Acres*, 2009 U.S. Dist. LEXIS 4612, at *14-15.

### A. The Tillery Property

The Tillery Property comprises 1.00 total acre of vacant land utilized for recreational purposes. The site will be encumbered by a proposed 50-foot-wide Permanent Easement encompassing 0.10 acre and a Temporary Easement encompassing 0.03 acre. The value of the Permanent Easement on the Tillery Property is $75.00, the damages to the remainder of the Tillery Property is $0.00, and the total market rent for the Temporary Easement on the Tillery Property is $15.00 – making the total appraised value of the parcel $90.00. Excluding Ahmad Khalil Shy, Jr., and Lloyd E. Pettus, the Non-Responsive Defendants have a collective 39.93% ownership interest in the Tillery Property. Accordingly, the just compensation for the Tillery Property is $35.94.

The GAL's answers on behalf of the defendants Ahmad Khalil Shy, Jr., and Lloyd E. Pettus recommend that the Court accept and approve the settlement amount of $250.00 offered by Atlantic to Shy and Pettus. *See* Dk. Nos. 154, 155, 346.

### ***B. The Langston Property***

The Langston Property comprises 1.36 total acres of vacant, mostly wooded land. The site will be encumbered by a proposed 50-foot-wide Permanent Easement encompassing 0.18 acre and a proposed Temporary Easement encompassing 0.003 acre. The value of the Permanent Easement on the Langston Property is $783.00, the damages to the remainder of the Langston Property is $0.00, and the total market rent for the Temporary Easement on the Langston Property is $10.00 – making the total appraised value of the parcel $793.00. The Non-Responsive Defendants have a collective ownership interest of 8.555% in the parcel. Accordingly, the just compensation for the Langston Property is $67.84.

### V. **CONCLUSION**

For the foregoing reasons, the Court will grant Atlantic's motion for default judgment against the Non-Responsive Defendants in the two underlying cases. After Atlantic pays just compensation to the Non-Responsive Defendants, Atlantic may take immediate possession of the Easements across the Subject Properties identified in its Complaints in Condemnation for the two underlying cases.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 19 March 2019
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge