IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ATLANTIC COAST PIPELINE, LLC,
    Plaintiff,

v.                                              Lead Case No. 3:17-cv-00814-JAG
                                                 Underlying Case No. 2:18-cv-00447-JAG
                                                 Underlying Case No. 3:18-cv-00573-JAG
                                                 Underlying Case No. 3:18-cv-00716-JAG

1.52 ACRES, MORE OR LESS, IN NOTTOWAY
COUNTY, VIRGINIA, et al.,
    Defendants.

## OPINION

Atlantic Coast Pipeline, LLC ("Atlantic"), seeks to exercise its eminent domain powers pursuant to Section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h). On August 15, 2018, Atlantic filed its Complaint in Condemnation to acquire certain easements in underlying case 2:18-cv-447. On August 20, 2018, Atlantic filed its Complaint in Condemnation to acquire certain easements in underlying case 3:18-cv-573. On October 19, 2018, Atlantic filed its Complaint in Condemnation to acquire certain easements in underlying case 3:18-cv-716. Atlantic subsequently served the defendants named in the three underlying cases through publication. On July 2, 2019, the Clerk entered default against the defendants who failed to respond in all three underlying cases (the "Non-Responding Defendants"). Atlantic filed its Motion for Default Judgment against the Non-Responding Defendants in all three underlying cases on July 12, 2019.

As a natural gas company in possession of a certificate of public convenience and necessity from the Federal Energy Regulatory Commission, Atlantic may condemn the property interests at issue in this litigation and is thus entitled to have default judgment granted in its favor against the Non-Responding Defendants.

# I. FACTS

## A. Atlantic Is a Natural Gas Company in Possession of a Certificate of Public Convenience and Necessity Issued by the FERC

Atlantic is an interstate natural gas company as defined by Section 2(a) of the Natural Gas Act, 15 U.S.C. § 717, *et seq.* Atlantic is subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC") and is authorized to construct, own, operate, and maintain pipelines for the transmission of natural gas in interstate commerce. *See* 15 U.S.C. § 717; Dk. No. 622, Memo. in Supp. of Atlantic's Mot. for Default J., Ex. 1, Decl. of Jedidiah Spratt ("Spratt Decl.") ¶ 7.

Atlantic is in the process of constructing an approximately 600-mile underground pipeline and related facilities for the purpose of transporting natural gas from West Virginia to Virginia and North Carolina (the "ACP Project"). *See* Spratt Decl. ¶ 5. The ACP Project will measure approximately 42 inches in diameter in West Virginia and Virginia, and 36 inches in diameter in North Carolina. Certain extensions of the ACP Project will measure 20 inches in diameter from Northampton County, North Carolina, to the City of Chesapeake, Virginia, and 16 inches in diameter in Brunswick County, Virginia, and Greensville County, Virginia. *See* Spratt Decl. ¶ 8. Natural gas transported by the ACP Project will serve multiple public utilities. *See* Spratt Decl. ¶ 9.

Atlantic filed an application for a certificate of public convenience and necessity with FERC on September 18, 2015, FERC Docket No. CP15-554-000, in which it sought permission to construct the ACP Project and attendant facilities. On October 13, 2017, FERC issued a certificate of public convenience and necessity (the "FERC Certificate") authorizing Atlantic to construct and operate the ACP Project. Compl. Ex. 2; *see* Spratt Decl. ¶ 10; *see also* Spratt Decl., Ex. A, the October 13, 2017 Certificate of Public Convenience and Necessity Issued by the Federal Energy Regulatory Commission to Atlantic.

### B. Atlantic Seeks to Condemn Certain Property Rights from the Defendants

Each of the Non-Responding Defendants for each underlying case owns a property interest in the certain tracts of land sought to be condemned by Atlantic. *See* Dk. No. 1, ¶ 5 (2:18-cv-447); Dk. No. 1, ¶ 5 (3:18-cv-573); Dk. No. 1, ¶ 5 (3:18-cv-716). Atlantic filed its Complaints in Condemnation to acquire easements from the Non-Responding Defendants for the three underlying cases. *See* Dk. No. 1, ¶ 2 (2:18-cv-447); Dk. No. 1, ¶ 2 (3:18-cv-573); Dk. No. 1, ¶ 2 (3:18-cv-716).

Specifically, Atlantic seeks to construct a portion of the ACP Project on the Properties described in detail below. The ACP Project cannot be constructed until Atlantic acquires certain permanent easements (the "Permanent Easement") and temporary easements (the "Temporary Easement") on the Properties (collective, the "Easements"). Atlantic also seeks an easement for an access road in underlying case 3:18-cv-716 (the "Access Road Easement"). The Easements are necessary for constructing, maintaining, operating, altering, testing, replacing, and repairing the ACP Project. *See* Dk. No. 1, ¶ 16 (2:18-cv-447); Dk. No. 1, ¶ 16 (3:18-cv-573); Dk. No. ¶ 16 (3:18-cv-716).

The Permanent Easements to be taken on each Property include a permanent and exclusive easement and right-of-way to construct, operate, maintain, replace, repair, remove, or abandon the ACP Project and appurtenant equipment and facilities, as well as the right to change the location of the installed pipeline within the area of the Permanent Easement as may be necessary or advisable. *See* Dk. No. 1, ¶ 19 (2:18-cv-447); Dk. No. 1, ¶ 18 (3:18-cv-573); Dk. No. 1, ¶ 18 (3:18-cv-716).

The Temporary Easement will enable Atlantic to construct the ACP Project and engage in restoration or clean-up activities. The Temporary Easement is requested as of the date of

authorized entry onto the Property and their use is required until all work, including restoration, is complete. The Temporary Easement will be effective and condemned for a period not to exceed five (5) years following Atlantic's possession of the Easements. *See* Dk. No. 1, ¶ 20 (2:18-cv-447); Dk. No. 1, ¶ 19 (3:18-cv-573); Dk. No. 1, ¶ 19 (3:18-cv-716).

The Access Road Easement to be taken on the Property in underlying case 3:18-cv-716 will provide Atlantic with a mode of access to the ACP Project and related facilities, as well as the ability to transport the personnel, materials, and machinery needed to construct the ACP Project. The Access Road Easement to be taken on the Property includes use of both existing and new roads, the right to construct a permanent access road with a width not to exceed thirty feet, and the right to improve any existing access roads to a width not to exceed thirty feet. *See* Dk. No. 1, ¶ 20 (3:18-cv-716).

*1. Underlying Case Number 2:18-cv-447*

The Non-Responding Defendant Anthony Saunders owns real property located in the City of Suffolk, Virginia, and more particularly described as (1) Parcel Identification No. 38*20, composed of 20.48 acres, more or less per tax records, and being more particularly described as 36.5 acres in Book 407, Page 806; less and except a certain tract containing 6.0 acres, more or less, more particularly described as Parcel 1 in Plat Book 12, Page 160; less and except a certain tract containing 3.0 acres, more or less, more particularly described as Parcel 2 in Plat Book 12, Page 160; less and except a certain tract containing 1.0 acre, more or less, more particularly described as Parcel 3 in Plat Book 12, Page 160; less and except a certain tract containing 1.0 acre, more or less, more particularly described as Parcel 4 in Plat Book 12, Page 160; less and except a certain tract containing 5.023 acres, more or less, as described in Plat Book 13, Page 49 of public records of said City; and (2) Parcel Identification No. 38*20*5, composed of 5.02 acres, more or less per

tax records, being more particularly described as 5.023 acres in Plat Book 13, Page 49 of the public records of said City, all among the land records of the City of Suffolk, Virginia (collectively, "the Foreman/Saunders Property"). See Dk. No. 1, ¶ 5 (2:18-cv-447).

Atlantic attempted to negotiate to acquire Easements over the Foreman/Saunders Property for the purpose of the construction of an interstate natural gas pipeline. *See* Spratt Decl. ¶¶ 12-14. There are 10 landowners who have already settled with Atlantic for the Foreman/Saunders Property. Saunders has roughly a 10% ownership interest in the Foreman/Saunders Property. Atlantic has been unable to locate Saunders, despite making reasonable efforts to do so. Thus, Atlantic has been unable to acquire by contract, or has been unable to agree with Saunders as to the compensation to be paid for, the necessary easements to construct, operate, and maintain a pipeline for the transportation of natural gas.

The area and dimensions of the Easements Atlantic seeks to condemn on the Foreman/Saunders Property are depicted in Exhibit 4-A and 4-B to the Complaint in Condemnation. *See* Dk. No. 1-4A and 1-4B (2:18-cv-447); *see also* Atlantic's Hearing Exhibit Nos. 2-A and 2-B, Dk. No. 640. The legal rights that make up the Easements Atlantic seeks to condemn on the Foreman/Saunders Property are recited in Atlantic's Complaint. *See* Dk. No. 1, ¶¶ 19-20 (2:18-cv-447).

### 2. *Underlying Case Number 3:18-cv-573*

The Non-Responding Defendants Rufus Pegram, Jr., the Unknown Heirs of Georgia Pegram a/k/a Georgia Ross, and the Unknown Heirs of Georgia Pegram a/k/a Georgia E. Badgett own real property located in Brunswick County, Virginia, identified as Parcel Identification No. 8-8A, composed of 18 acres, more or less, and being more particularly described as 18 acres as shown on the Plat filed as Instrument # 010001122, being a new survey, which corrects the

acreage, recorded in the public records of said County (the "James Pegram Heirs Property"). *See* Dk. No. 1, ¶ 5 (3:18-cv-573).

Atlantic attempted to negotiate to acquire the Easements over the James Pegram Heirs Property for the purpose of the construction of an interstate natural gas pipeline, but was unable to reach an agreement. Atlantic also performed a reasonably diligent search of the records associated with the James Pegram Heirs Property and has been unable to determine the identities of the unknown heirs, the Unknown Heirs of Georgia Pegram a/k/a Georgia Ross and the Unknown Heirs of Georgia Pegram a/k/a Georgia E. Badgett, and therefore has been unable to acquire by contract the condemned easement rights. *See* Spratt Decl. ¶¶ 12-14. The Non-Responding Defendants are a mix of known landowners and unknown heirs who collectively have a roughly 42.22% ownership interest in the Property. Atlantic has been unable to acquire by contract, or has been unable to agree with the remaining named defendants as to the compensation to be paid for, the necessary easements to construct, operate, and maintain a pipeline for the transportation of natural gas. Atlantic has been unable to determine the identities of the unknown heirs, and therefore was unable to acquire by contract the necessary easements to construct, operate, and maintain a pipeline for the transportation of natural gas.

The area and dimensions of the Easements Atlantic seeks to condemn on the James Pegram Heirs Property are depicted in Exhibit 4 to the Complaint in Condemnation. *See* Dk. No. 1-4 (3:18-cv-573); *see also* Atlantic's Hearing Exhibit No. 2, Dk. No. 643. The legal rights that make up the Easements Atlantic seeks to condemn on the James Pegram Heirs Property are recited in Atlantic's Complaint. *See* Dk. No. 1, ¶¶ 18-19 (3:18-cv-573).

### 3. *Underlying Case Number 3:18-cv-716*

The Non-Responding Defendants, the Unknown Heirs of Nelson Fields, own real property located in Brunswick County, Virginia, identified as (1) Parcel Identification No. 7-2, composed of 28 acres, more or less, located in Brunswick County, Virginia and being particularly described as 28 acres, more or less, on a plat in Deed Book 147, Page 467, of the public records of said county; and (2) Parcel Identification No. 7-2A, composed of 108.65 acres, more or less, located in Brunswick County, Virginia and being more particularly shown as 111.17 acres, more or less, in Deed Book 147, Page 469, of the public records of said county, less and except a certain tract containing 1.50 acres, more or less, as described in Deed Book 319, Page 627 of the public records, less and except a certain tract containing 1.02 acres, more or less as described in Deed Book 184, Page 637 of the public records of said county (collectively, the "Fields Heirs Property"). *See* Dk. No. 1, ¶ 5 (3:18-cv-00716-JAG).

Atlantic performed a reasonably diligent search of the records associated with the Fields Heirs Property and has been unable to determine the identities of these defendant landowners, and therefore has been unable to acquire by contract the condemned easement rights. *See* Spratt Decl. ¶¶ 12-13. There are 35 landowners who have already signed agreements with Atlantic for the Fields Heirs Property. The Non-Responding Defendants are unknown heirs who collectively have a roughly 7.14% ownership interest. Atlantic, has been unable to determine the identities of the defendant landowners, and therefore was unable to acquire by contract the necessary easements to construct, operate, and maintain a pipeline for the transportation of natural gas.

The area and dimensions of the Easements Atlantic seeks to condemn on the Fields Heirs Property are depicted in Exhibit 1-A and Exhibit 1-B to the Complaint in Condemnation. *See* Dk. Nos. 1-4A and 1-4B, (3:18-cv-716); *see also* Atlantic's Hearing Exhibit No. 2A and 2B, Dk. No.

637. The legal rights that make up the Easements Atlantic seeks to condemn on the Fields Heirs Property are recited in Atlantic's Complaint. *See* Dk. No. 1, ¶¶ 18-20 (3:18-cv-716).

### C. *None of the Defendant Landowners Responded to Atlantic's Complaint in Condemnation*

Atlantic has properly served process on the Non-Responding Defendants and filed the appropriate affidavits of service and certificates of proof by publication. *See* Dk. Nos. 617, 618, 619, 620, 621, 622. The Non-Responding Defendants have not filed any responsive pleading and are thus in default. *See* Dk. Nos. 613, 614, 615. Without gaining full access and rights from the Non-Responding Defendants to the Easements that are necessary to the ACP Project, Atlantic cannot timely complete construction of the ACP Project.

## II. DISCUSSION

### A. *Default Judgment*

Under Rule 12(a) of the Federal Rules of Civil Procedure, a defendant must serve an answer within 21 days after being served with the summons and complaint. Fed. R. Civ. P. 12(a). Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). As a result of the Non-Responding Defendants' failure to respond, the Clerk entered default against them on July 2, 2019. *See* Dk. Nos. 613, 614, 615.

## B. Atlantic Has the Right to Condemn

### *1. The Natural Gas Act Provides Atlantic with the Authority to Condemn*

The Natural Gas Act provides Atlantic with the authority to condemn interests in property where (i) Atlantic is the holder of a certificate of public convenience and necessity from FERC and (ii) Atlantic and the landowner cannot agree on the compensation for the property interest at stake:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C. § 717f(h).

### *2. Atlantic Has a Certificate of Public Convenience and Necessity*

The FERC Certificate issued to Atlantic gives Atlantic the unequivocal power of eminent domain, which includes the power to condemn any land, including the Easements, which is necessary for the construction of the ACP Project. No fact can genuinely be in dispute as to the issuance of the FERC Certificate or the contents therein because a certificate of public convenience and necessity is a matter of public record and not subject to collateral attack. *See E. Tenn. Nat. Gas, LLC v. 1.28 Acres*, No. 1:06-cv-00022, 2006 U.S. Dist. LEXIS 24450, at *36-37 (W.D. Va. Apr. 26, 2006) (holding that the defendants could not use a condemnation action to review the propriety of the issuance of a FERC certificate) (citing *Williams Nat. Gas Co. v. Okla. City*, 890 F.2d 255, 264 (10th Cir. 1989), *cert. denied*, 497 U.S. 1003 (1990)); *see also Am. Energy Corp. v. Rockies Express Pipeline LLC*, No. 2:09-cv-284, 2009 U.S. Dist. LEXIS 59972, at *9 (S.D. Ohio July 14, 2009) (holding that "a district court lacks jurisdiction to review the validity and/or

conditions of a FERC certificate . . . [and] the function of the district court is not to provide appellate review, but rather to provide for enforcement").

Here, just as in *1.28 Acres*, Atlantic has satisfied the first condition of Section 717f(h) because FERC granted Atlantic a Certificate of Public Convenience. Based on the language of the FERC Certificate and controlling case law, Atlantic has the power of eminent domain under the Natural Gas Act and the right to the easements by eminent domain.

### 3. *The Easement Rights Atlantic Seeks Are Necessary*

Atlantic must acquire the Easements in order to install, construct, and maintain the ACP Project. *See* Spratt Decl. ¶ 6, 15. The FERC-approved route for the ACP Project crosses the Properties. *See* Dk. Nos. 1-4A and 1-4B (2:18-cv-447); *see also* Atlantic's Hearing Exhibit Nos. 2-A and 2-B, Dk. No. 640; Dk. No. 1-4 (3:18-cv-573); *see also* Atlantic's Hearing Exhibit No. 2, Dk. No. 643; Dk Nos. 1-4A and 1-4B (3:18-cv-716); *see also* Atlantic's Hearing Exhibit Nos. 2A and 2B, Dk. No. 637. The ACP Project cannot be constructed without the Easements. *See* Spratt Decl. ¶ 16.

Thus, the Easements are necessary for the construction of the ACP Project, entitling Atlantic to judgment on its right to condemn the Easements. *See Transcon. Gas Pipeline Co., LLC v. Permanent Easement Totaling 2.322 Acres*, No. 3:14-cv-00400-HEH, 2014 U.S. Dist. LEXIS 122588, at *11 (E.D. Va. Sept. 2, 2014) ("Additionally, the FERC Certificate[] . . . establishes that the property condemned in this matter is necessary for the construction, operation, and maintenance of the pipeline at issue."); *Hardy Storage Co. v. Prop. Interests Necessary to Conduct Gas Storage Operations*, No. 2:07CV5, 2009 U.S. Dist. LEXIS 18124, at *13-14 (N.D. W. Va. Mar. 9, 2009) (finding that a landowner's challenge to the necessity of the proposed easement constitutes an impermissible collateral attack).

### 4. *Atlantic Cannot Acquire the Necessary Easements by Contract*

#### a. *Underlying Cases 2:18-cv-447*

Atlantic has been unable to reach an agreement with the Owner on the amount of compensation for the Easements. *See* Spratt Decl. ¶¶ 12-14. Atlantic started negotiations with the Non-Responding Defendant to acquire the Easements in 2015. *See* Spratt Decl. ¶ 13. Atlantic, however, has been unable to obtain the remaining interest in the Easements by contract. *See* Spratt Decl. ¶¶ 12-14; *Hardy*, 2009 U.S. Dist. LEXIS 18124, at *16 (finding that "[the condemnor] is not required by the [NGA] or Rule 71.1 to engage in 'good faith' negotiations with the landowner"); *E. Tenn. Natural Gas*, 2006 U.S. Dist. LEXIS 24450, at *28-29 (concluding that "[a]ll the [NGA] requires is a showing that the plaintiff has been unable to acquire the property by contract or has been unable to agree with the owner of the property as to the compensation to be paid").

#### b. *Underlying Case 3:18-cv-573*

Atlantic has been unable to reach an agreement with the Owners on the amount of compensation for the Easements. *See* Spratt Decl. ¶¶ 12-14. Atlantic started negotiations with the named Non-Responding Defendant to acquire the Easements in 2016. *See* Spratt Decl. ¶ 13. Atlantic performed a reasonably diligent search of the records associated with the James Pegram Heirs Property and has been unable to determine the identities of the Unknown Heirs. *See* Spratt Decl. ¶ 14. Atlantic, however, has been unable to obtain the remaining interest in the Easements by contract. *See* Spratt Decl. ¶¶ 12-14

#### c. *Underlying Case 3:18-cv-716*

Atlantic has been unable to determine the identities of the remaining defendant landowners. *See* Spratt Decl. ¶¶ 12-13. The remaining defendants are the Unknown Heirs of Nelson Fields.

Atlantic, therefore, has been unable to obtain the remaining interest in the Easements by contract. *See* Spratt Decl. ¶¶ 15, 16

### 5. *The Non-Responding Defendants Are in Default*

The named Non-Responding Defendants have failed to file an answer or response in the time period required pursuant to Section 12(a) of the Federal Rules of Civil Procedure. As a result, the Clerk entered default for the Non-Responding Defendants on July 2, 2019. *See* Dk. No. 613, 614, 615. Accordingly, Atlantic is entitled to an order confirming its right to condemn the Non-Responding Defendants' Properties pursuant to the authority conferred by 15 U.S.C. § 717f(h) and default judgment against the Non-Responding Defendants. *See, e.g., E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 827-28 (4th Cir. 2004) (citing cases); *Columbia Gas Transmission Corp. v. An Easement to Construct, Operate, and Maintain a 24-Inch Transmission Pipeline Across Properties in Greene Cty.*, 2007 U.S. Dist. LEXIS 55422, at *9-10 (W.D. Va. July 31, 2007) (granting judgment where Columbia had established that it was a holder of a FERC certificate and no agreement with respect to just compensation could be reached); *Nw. Pipeline Corp. v. The 20' x 1,430' Pipeline Right of Way Easement 50' x 1,560' Temp. Staging Area*, 197 F. Supp. 2d 1241, 1243-44 (E.D. Wash. 2002) (granting summary judgment as to validity of taking); *Tenn. Gas Pipeline Co. v. New England Power, C.T.L., Inc.*, 6 F. Supp. 2d 102, 104 (D. Mass. 1998) (granting motion for partial summary judgment where the condemnor satisfied the elements of Section 717f(h)).

Atlantic has established that it holds a FERC Certificate and that it has been unable to reach an agreement with the Non-Responding Defendants with respect to the Easements. Atlantic, therefore, has stated a legitimate claim and is entitled to condemn the Non-Responding Defendants' Properties. *See Columbia Gas Transmission, LLC v. 0.85 Acres, More or Less, in*

*Harford Cty.*, 2014 U.S. Dist. LEXIS 125318, at *17 (D. Md. Sept. 8, 2014) (granting Columbia's Motion for Partial Summary Judgment where the court determined that requirements of Section 717f(h) were met); *Columbia Gas Transmission, LLC v. 370.393 Acres, More or Less, in Baltimore Cty.*, 2014 U.S. Dist. LEXIS 144055, at *15-16 (D. Md. Oct. 9, 2014) (same).

## IV. <u>JUST COMPENSATION</u>

The only issue remaining is the just compensation owed to the Non-Responding Defendants. Atlantic offered evidence about the properties discussed above (the "Subject Properties") and the areas of the taking from each individual property, and the rights for the Easements that Atlantic seeks to condemn.

The landowners have the burden of proving, by a preponderance of the evidence, the amount of just compensation owed for the easements condemned by Atlantic. *United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 273 (1943); *Bank of Edenton v. United States*, 152 F.2d 251, 253 (4th Cir. 1945); *Vector Pipeline LP v. 68.55 Acres of Land*, 157 F. Supp. 2d 949, 952 (N.D. Ill. 2001). Just compensation is measured from the point of view of the landowner. The yardstick is what a landowner has lost, not what Atlantic has gained. *Bos. Chamber of Commerce v. City of Bos.*, 217 U.S. 189, 195 (1910); *see also United States v. Causby*, 328 U.S. 256, 261 (1946) ("It is the owner's loss, not the taker's gain, which is the measure of the value of the property taken."). Courts apply the objective standard of fair market value to determine what the landowner has lost when its property is condemned. *United States v. 564.54 Acres of Land*, 441 U.S. 506, 511 (1979). Fair market value is defined as the fair and reasonable amount which could be attained in the open market at a voluntary sale. *Id.*

Where a taking is temporary in duration rather than permanent, then the condemning authority "essentially takes a leasehold in the property," and "the value of the taking is what rental

the marketplace would have yielded for the property taken." *United States v. Banisadr Bldg. Joint Venture*, 65 F.3d 374, 378 (4th Cir. 1995). If the condemnor is the only party to admit evidence to the Court of the value of the real property taken, the Court may use that evidence to determine the just compensation of the property and enter default judgment against defendant landowners and award the defendants their just compensation as determined by the condemnor. *See Gulf Crossing Pipeline Co. LLC v. 86.36 Acres*, No. 08-689, 2009 U.S. Dist. LEXIS 4612, at *14-15 (W.D. La. Jan. 23, 2009).

Here, Atlantic offered evidence as to the value of the Easements condemned through its valuation expert, Corey Sell, and the appraisals that Mr. Sell prepared for each of the Subject Properties. Atlantic offered the appraisal of the Foreman/Saunders Property in underlying case 2:18-cv-447 as Atlantic's Hearing Exhibit No. 4. Dk. No. 640. Atlantic offered the appraisal of the James Pegram Heirs Property in underlying case 3:18-cv-573 as Atlantic's Hearing Exhibit No. 4. Dk. No. 643. Atlantic offered the appraisal of the Fields Heirs Property in underlying case 3:18-cv-716 as Atlantic's Hearing Exhibit No. 4. Dk. No. 637. The appraisals for each of the Subject Properties are proper evidence for the determination of just compensation for the Subject Properties. *See 86.36 Acres*, 2009 U.S. Dist. LEXIS 4612, at *14-15.

### A. The Foreman/Saunders Property in 2:18-cv-447

The Foreman/Saunders Property comprises 25.50 total acres of vacant land utilized for wooded recreational and agricultural purposes. The site will be encumbered by a proposed 50-foot-wide Permanent Easement encompassing 1.160 acres and a Temporary Easement encompassing 0.580 acre. The value of the Permanent Easement on the Foreman/Saunders Property is $2,030.00, the damages to the remainder of the Foreman/Saunders Property is $0.00, and the total market rent for the Temporary Easement on the Property is $725.00 – making the

total value for the Foreman/Saunders Property $2,755.00. Accordingly, the total just compensation due to the Non-Responding Defendant in this consolidated matter is $275.50.

### B. *The James Pegram Heirs Property in 3:18-cv-573*

The James Pegram Heirs Property comprises 18.00 total acres of improved land utilized for rural residential and agricultural purposes. The site will be encumbered by a proposed 50-foot-wide Permanent Easement encompassing 0.040 acre and a Temporary Easement encompassing 0.540 acre. The value of the Permanent Easement on the James Pegram Heirs Property is $60.00, the damages to the remainder of the James Pegram Heirs Property is $0.00, and the total market rent for the Temporary Easement on the James Pegram Heirs Property is $540.00 – making the total value for the James Pegram Heirs Property $600.00. Accordingly, the total just compensation due to the Non-Responding Defendants in this consolidated matter is $253.33.

### C. *The Fields Heirs Property in 3:18-cv-716*

The Fields Heirs Property identified as Parcel Identification No. 7-2 (the "7-2 Parcel"), comprises 28.00 total acres of vacant land utilized for wooded recreational purposes. The site will be encumbered by a proposed 50-foot-wide Permanent Easement encompassing 0.450 acre, a proposed Permanent Access Road Easement encompassing 0.010 acre, and a Temporary Easement encompassing 0.440 acre. The value of the Permanent Easement on the 7-2 Parcel is $675.00, the value of the Permanent Access Road Easement is $18.00, the damages to the remainder of the 7-2 Parcel is $0.00, and the total market rent for the Temporary Easement on the 7-2 Parcel is $440.00 – making the total value for the 7-2 Parcel $1,133.00.

The Fields Heirs Property identified as Parcel Identification No. 7-2A (the "7-2A Parcel"), comprises 108.65 total acres of vacant land utilized for wooded recreational, agricultural, and rural residential purposes. The site will be encumbered by a proposed 50-foot-wide Permanent

Easement encompassing 2.830 acre and a Temporary Easement encompassing 5.670 acres. The value of the Permanent Easement on the 7-2A Parcel is $4,245.00, the damages to the remainder of the 7-2A Parcel is $0.00, and the total market rent for the Temporary Easement on the 7-2A Parcel is $5,670.00 – making the total value for the 7-2A Parcel $9,915.00.

The combined total value for the Fields Heirs Properties identified as Parcel Identification Nos. 7-2 and 7-2A is $11,048.00. Accordingly, the total just compensation is $789.14.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Atlantic's motions for default judgment against the Non-Responsive Defendants in the three underlying cases. After Atlantic pays just compensation to the Non-Responsive Defendants, Atlantic may take immediate possession of the Easements across the Subject Properties identified in its Complaints in Condemnation for the three underlying cases.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 29 October 2019
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge