IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ATLANTIC COAST PIPELINE, LLC,
Plaintiff,

v.   Lead Case No. 3:17-cv-00814-JAG
     Underlying Case No. 2:18-cv-00580-JAG

1.52 ACRES, MORE OR LESS, IN NOTTOWAY
COUNTY, VIRGINIA, et al.,
Defendants.

## OPINION

Atlantic Coast Pipeline, LLC ("Atlantic"), seeks to exercise its eminent domain powers pursuant to Section 7(h) of the Natural Gas Act, 15 U.S.C. § 717f(h). On October 31, 2018, Atlantic filed its Complaint in Condemnation to acquire certain easements in underlying case 2:18-cv-580. Atlantic subsequently served the defendants named in the underlying case. On November 14, 2019, the Clerk entered default against the defendants who failed to respond in the underlying case (the "Non-Responding Defendants"). Atlantic filed its Motion for Default Judgment against the Non-Responding Defendants on December 4, 2019.

As a natural gas company in possession of a certificate of public convenience and necessity from the Federal Energy Regulatory Commission, Atlantic may condemn the property interests at issue in this litigation and is thus entitled to have default judgment granted in its favor against the Non-Responding Defendants.

## I. FACTS

### A. Atlantic Is a Natural Gas Company in Possession of a Certificate of Public Convenience and Necessity Issued by the FERC

Atlantic is an interstate natural gas company as defined by Section 2(a) of the Natural Gas Act, 15 U.S.C. § 717, *et seq.* Atlantic is subject to the jurisdiction of the Federal Energy Regulatory

Commission ("FERC") and is authorized to construct, own, operate, and maintain pipelines for the transmission of natural gas in interstate commerce. *See* 15 U.S.C. § 717; Dk. No. 668, Memo. in Supp. of Atlantic's Mot. for Default J., Ex. 1, Decl. of Jedidiah Spratt ("Spratt Decl.") ¶ 7.

Atlantic is in the process of constructing an approximately 600-mile underground pipeline and related facilities for the purpose of transporting natural gas from West Virginia to Virginia and North Carolina (the "ACP Project"). *See* Spratt Decl. ¶ 5. The ACP Project will measure approximately 42 inches in diameter in West Virginia and Virginia, and 36 inches in diameter in North Carolina. Certain extensions of the ACP Project will measure 20 inches in diameter from Northampton County, North Carolina, to the City of Chesapeake, Virginia, and 16 inches in diameter in Brunswick County, Virginia, and Greensville County, Virginia. *See* Spratt Decl. ¶ 8. Natural gas transported by the ACP Project will serve multiple public utilities. *See* Spratt Decl. ¶ 9.

Atlantic filed an application for a certificate of public convenience and necessity with FERC on September 18, 2015, FERC Docket No. CP15-554-000, in which it sought permission to construct the ACP Project and attendant facilities. On October 13, 2017, FERC issued a certificate of public convenience and necessity (the "FERC Certificate") authorizing Atlantic to construct and operate the ACP Project. Compl. Ex. 2; *see* Spratt Decl. ¶ 10; *see also* Spratt Decl., Ex. A, the October 13, 2017 Certificate of Public Convenience and Necessity Issued by the Federal Energy Regulatory Commission to Atlantic.

### *B. Atlantic Seeks to Condemn Certain Property Rights from the Defendants*

Each of the Non-Responding Defendants in the underlying case owns a property interest in the certain tracts of land sought to be condemned by Atlantic. *See* Dk. No. 1, ¶ 5 (2:18-cv-580).

Atlantic filed its Complaint in Condemnation to acquire easements from the Non-Responding Defendants for the underlying case. *See* Dk. No. 1, ¶ 2 (2:18-cv-580).

Specifically, Atlantic seeks to construct a portion of the ACP Project on the Property described in detail below. The ACP Project cannot be constructed until Atlantic acquires certain permanent easements (the "Permanent Easement") and temporary easements (the "Temporary Easement") on the Property (collective, the "Easements"). The Easements are necessary for constructing, maintaining, operating, altering, testing, replacing, and repairing the ACP Project. *See* Dk. No. 1, ¶ 16 (2:18-cv-580).

The Permanent Easements to be taken on the Property include a permanent and exclusive easement and right-of-way to construct, operate, maintain, replace, repair, remove, or abandon the ACP Project and appurtenant equipment and facilities, as well as the right to change the location of the installed pipeline within the area of the Permanent Easements as may be necessary or advisable. *See* Dk. No. 1, ¶ 18 (2:18-cv-580).

The Temporary Easements will enable Atlantic to construct the ACP Project and engage in restoration or clean-up activities. The Temporary Easements are requested as of the date of authorized entry onto the Property and their use is required until all work, including restoration, is complete. The Temporary Easements will be effective and condemned for a period not to exceed five (5) years following Atlantic's possession of the Easements. *See* Dk. No. 1, ¶ 19 (2:18-cv-580).

The Non-Responding Defendants Nathan Jarvis, III; Johnnie A. Griffin a/k/a Johnnie Augustus Griffin; Paulette Todd; and Jonathan Griffin own a certain tract of land located in the City of Chesapeake, Virginia, identified as Parcel Identification No. 0330000002200, comprised of 12.00 acres, more or less, as is more particularly described and depicted as Lot 8 on that certain

plat containing 13.500 acres, more or less, recorded in Deed Book 94, Page 613, among the land records of the City of Chesapeake, Virginia; less and except, that certain tract containing 1.50 acres, more or less, as described in Deed Book 1472, Page 439 recorded among the land records of the City of Chesapeake, Virginia. *See* Dk. No. 1, ¶ 5 (2:18-cv-580); Spratt Decl. ¶ 12.

Atlantic attempted to negotiate with the named defendants to acquire the Easements over the Property for the purpose of the construction of an interstate natural gas pipeline, but was unable to reach an agreement. *See* Spratt Decl. ¶¶ 13-15. The remaining, active defendants in this case have a roughly 7.86 percent ownership interest in the Property. *See* Spratt Decl. ¶ 12. Atlantic has been unable to acquire by contract, or has been unable to agree with the remaining named defendants as to the compensation to be paid for, the necessary easements to construct, operate, and maintain a pipeline for the transportation of natural gas. *See* Spratt Decl. ¶¶ 12-15.

The area and dimensions of the Easements Atlantic seeks to condemn on the Property are depicted in Exhibit 4 to the Complaint in Condemnation. *See* Dk. No. 1-4 (2:18-cv-580). The legal rights that make up the Easements Atlantic seeks to condemn on the Property are recited in Atlantic's Complaint. *See* Dk. No. 1, ¶¶ 18-22 (2:18-cv-580).

### *C. None of the Defendant Landowners Responded to Atlantic's Complaint in Condemnation*

Atlantic has properly served process on the Non-Responding Defendants and filed the appropriate affidavits of service and certificates of proof by publication. *See* Dk. Nos. 667, 668. The Non-Responding Defendants have not filed any responsive pleading and are thus in default. *See* Dk. No. 661. Without gaining full access and rights from the Non-Responding Defendants to the Easements that are necessary to the ACP Project, Atlantic cannot timely complete construction of the ACP Project. Spratt Decl. ¶ 17.

## II. DISCUSSION

### A. Default Judgment

Under Rule 12(a) of the Federal Rules of Civil Procedure, a defendant must serve an answer within 21 days after being served with the summons and complaint. Fed. R. Civ. P. 12(a). Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). As a result of the Non-Responding Defendants' failure to respond, the Clerk entered default against them on November 14, 2019. *See* Dk. No. 661.

### B. Atlantic Has the Right to Condemn

#### *1. The Natural Gas Act Provides Atlantic with the Authority to Condemn*

The Natural Gas Act provides Atlantic with the authority to condemn interests in property where (i) Atlantic is the holder of a certificate of public convenience and necessity from FERC and (ii) Atlantic and the landowner cannot agree on the compensation for the property interest at stake:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C. § 717f(h).

### 2. *Atlantic Has a Certificate of Public Convenience and Necessity*

The FERC Certificate issued to Atlantic gives Atlantic the unequivocal power of eminent domain, which includes the power to condemn any land, including the Easements, which is necessary for the construction of the ACP Project. No fact can genuinely be in dispute as to the issuance of the FERC Certificate or the contents therein because a certificate of public convenience and necessity is a matter of public record and not subject to collateral attack. *See E. Tenn. Nat. Gas, LLC v. 1.28 Acres*, No. 1:06-cv-00022, 2006 U.S. Dist. LEXIS 24450, at *36-37 (W.D. Va. Apr. 26, 2006) (holding that the defendants could not use a condemnation action to review the propriety of the issuance of a FERC certificate) (citing *Williams Nat. Gas Co. v. Okla. City*, 890 F.2d 255, 264 (10th Cir. 1989), *cert. denied*, 497 U.S. 1003 (1990)); *see also Am. Energy Corp. v. Rockies Express Pipeline LLC*, No. 2:09-cv-284, 2009 U.S. Dist. LEXIS 59972, at *9 (S.D. Ohio July 14, 2009) (holding that "a district court lacks jurisdiction to review the validity and/or conditions of a FERC certificate . . . [and] the function of the district court is not to provide appellate review, but rather to provide for enforcement").

Here, just as in *1.28 Acres*, Atlantic has satisfied the first condition of Section 717f(h) because FERC granted Atlantic a Certificate of Public Convenience. Based on the language of the FERC Certificate and controlling case law, Atlantic has the power of eminent domain under the Natural Gas Act and the right to the easements by eminent domain.

### 3. *The Easement Rights Atlantic Seeks Are Necessary*

Atlantic must acquire the Easements in order to install, construct, and maintain the ACP Project. *See* Spratt Decl. ¶ 6, 17. The FERC-approved route for the ACP Project crosses the Property. *See* Dk. No. 1-4 (2:18-cv-580); *see also* Atlantic's Trial Exhibit No. 2. Dk. No. 670. The ACP Project cannot be constructed without the Easements. *See* Spratt Decl. ¶ 17.

Thus, the Easements are necessary for the construction of the ACP Project, entitling Atlantic to judgment on its right to condemn the Easements. *See Transcon. Gas Pipeline Co., LLC v. Permanent Easement Totaling 2.322 Acres*, No. 3:14-cv-00400-HEH, 2014 U.S. Dist. LEXIS 122588, at *11 (E.D. Va. Sept. 2, 2014) ("Additionally, the FERC Certificate[] ... establishes that the property condemned in this matter is necessary for the construction, operation, and maintenance of the pipeline at issue."); *Hardy Storage Co. v. Prop. Interests Necessary to Conduct Gas Storage Operations*, No. 2:07CV5, 2009 U.S. Dist. LEXIS 18124, at *13-14 (N.D. W. Va. Mar. 9, 2009) (finding that a landowner's challenge to the necessity of the proposed easement constitutes an impermissible collateral attack).

### 4. *Atlantic Cannot Acquire the Necessary Easements by Contract*

Atlantic has been unable to reach an agreement with the Owner on the amount of compensation for the Easements. *See* Spratt Decl. ¶¶ 12-15. Atlantic started negotiations with the Non-Responding Defendants to acquire the Easements in 2016. *See* Spratt Decl. ¶ 13. Atlantic, however, has been unable to obtain the remaining interest in the Easements by contract. *See* Spratt Decl. ¶¶ 12-15; *Hardy*, 2009 U.S. Dist. LEXIS 18124, at *16 (finding that "[the condemnor] is not required by the [NGA] or Rule 71.1 to engage in 'good faith' negotiations with the landowner"); *E. Tenn. Natural Gas*, 2006 U.S. Dist. LEXIS 24450, at *28-29 (concluding that "[a]ll the [NGA] requires is a showing that the plaintiff has been unable to acquire the property by contract or has been unable to agree with the owner of the property as to the compensation to be paid").

### 5. *The Non-Responding Defendants Are in Default*

The Non-Responding Defendants have failed to file an answer or response in the time period required pursuant to Section 12(a) of the Federal Rules of Civil Procedure. As a result, the Clerk entered default for the Non-Responding Defendants on November 14, 2019. *See* Dk. No.

661. Accordingly, Atlantic is entitled to an order confirming its right to condemn the Non-Responding Defendants' Properties pursuant to the authority conferred by 15 U.S.C. § 717f(h) and default judgment against the Non-Responding Defendants. *See, e.g., E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 827-28 (4th Cir. 2004) (citing cases); *Columbia Gas Transmission Corp. v. An Easement to Construct, Operate, and Maintain a 24-Inch Transmission Pipeline Across Properties in Greene Cty.*, 2007 U.S. Dist. LEXIS 55422, at *9-10 (W.D. Va. July 31, 2007) (granting judgment where Columbia had established that it was a holder of a FERC certificate and no agreement with respect to just compensation could be reached); *Nw. Pipeline Corp. v. The 20' x 1,430' Pipeline Right of Way Easement 50' x 1,560' Temp. Staging Area*, 197 F. Supp. 2d 1241, 1243-44 (E.D. Wash. 2002) (granting summary judgment as to validity of taking); *Tenn. Gas Pipeline Co. v. New England Power, C.T.L., Inc.*, 6 F. Supp. 2d 102, 104 (D. Mass. 1998) (granting motion for partial summary judgment where the condemnor satisfied the elements of Section 717f(h)).

Atlantic has established that it holds a FERC Certificate and that it has been unable to reach an agreement with the Non-Responding Defendants with respect to the Easements. Atlantic, therefore, has stated a legitimate claim and is entitled to condemn the Non-Responding Defendants' Properties. *See Columbia Gas Transmission, LLC v. 0.85 Acres, More or Less, in Harford Cty.*, 2014 U.S. Dist. LEXIS 125318, at *17 (D. Md. Sept. 8, 2014) (granting Columbia's Motion for Partial Summary Judgment where the court determined that requirements of Section 717f(h) were met); *Columbia Gas Transmission, LLC v. 370.393 Acres, More or Less, in Baltimore Cty.*, 2014 U.S. Dist. LEXIS 144055, at *15-16 (D. Md. Oct. 9, 2014) (same).

## IV. JUST COMPENSATION

The only issue remaining is the just compensation owed to the Non-Responding Defendants. Atlantic offered evidence about the properties discussed above (the "Subject Property") and the areas of the taking from each individual property, and the rights for the Easements that Atlantic seeks to condemn.

The landowners have the burden of proving, by a preponderance of the evidence, the amount of just compensation owed for the easements condemned by Atlantic. *United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 273 (1943); *Bank of Edenton v. United States*, 152 F.2d 251, 253 (4th Cir. 1945); *Vector Pipeline LP v. 68.55 Acres of Land*, 157 F. Supp. 2d 949, 952 (N.D. Ill. 2001). Just compensation is measured from the point of view of the landowner. The yardstick is what a landowner has lost, not what Atlantic has gained. *Bos. Chamber of Commerce v. City of Bos.*, 217 U.S. 189, 195 (1910); *see also United States v. Causby*, 328 U.S. 256, 261 (1946) ("It is the owner's loss, not the taker's gain, which is the measure of the value of the property taken."). Courts apply the objective standard of fair market value to determine what the landowner has lost when its property is condemned. *United States v. 564.54 Acres of Land*, 441 U.S. 506, 511 (1979). Fair market value is defined as the fair and reasonable amount which could be attained in the open market at a voluntary sale. *Id.*

Where a taking is temporary in duration rather than permanent, then the condemning authority "essentially takes a leasehold in the property," and "the value of the taking is what rental the marketplace would have yielded for the property taken." *United States v. Banisadr Bldg. Joint Venture*, 65 F.3d 374, 378 (4th Cir. 1995). If the condemnor is the only party to admit evidence to the Court of the value of the real property taken, the Court may use that evidence to determine the just compensation of the property and enter default judgment against defendant landowners

and award the defendants their just compensation as determined by the condemnor. *See Gulf Crossing Pipeline Co. LLC v. 86.36 Acres*, No. 08-689, 2009 U.S. Dist. LEXIS 4612, at *14-15 (W.D. La. Jan. 23, 2009).

Here, Atlantic offered evidence as to the value of the Easements condemned through its valuation expert, Corey Sell, and the appraisals that Mr. Sell prepared for the Subject Property. Atlantic offered the appraisal of the Property as Atlantic's Hearing Exhibit No. 4. Dk. No. 670. The appraisals for the Subject Property are proper evidence for the determination of just compensation for the Subject Property. *See 86.36 Acres*, 2009 U.S. Dist. LEXIS 4612, at *14-15.

The Property comprises 12.00 total acres of land comprising vacant woodlands and existing easement area. The site will be encumbered by a proposed 50-foot-wide Permanent Easement encompassing 0.340 acre and a Temporary Easement encompassing 0.170 acre. The value of the Permanent Easement on the Property is $1,275.00, the damages to the remainder of the Property is $0.00, and the total market rent for the Temporary Easement on the Property is $425.00 – making the total value for the Property $1,700.00. Accordingly, the total just compensation due to the Non-Responding Defendants in this consolidated matter is $133.57.[1]

## V. CONCLUSION

For the foregoing reasons, the Court will grant Atlantic's motion for default judgment against the Non-Responsive Defendants in underlying case 2:18-cv-580. After Atlantic pays just compensation to the Non-Responsive Defendants, Atlantic may take immediate possession of the

---

[1] The 7.86% total ownership interest for the Non-Responding Defendants is more precisely broken down as follows: Nathan Jarvis, III accounts for 0.47618% ownership interest; Johnnie A. Griffin a/k/a Johnnie Augustus Griffin accounts for 2.08333% ownership interest; Paulette Todd accounts for 5.0% ownership interest; and Jonathan Griffin accounts for 0.29762% ownership interest. Using the more precise ownership percentage multiplied times the total appraised value will equal $133.57.

Easements across the Subject Property identified in its Complaint in Condemnation in this underlying case.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 13 December 2019
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge